UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RONDA D. BUTLER substituted party for | ) | |
| James D. Butler (deceased), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:14-cv-01272-TWP-MJD |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Ronda D. Butler ("Ms. Butler" or "Plaintiff"), for the deceased James D. Butler ("Mr. Butler"), requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Mr. Butler's applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED.**

## Procedural History and Background

Mr. Butler filed applications for DIB and SSI on October 10, 2008, alleging an onset of disability on September 1, 2008. [R. at 131-133.] He was 49 years old at the time of the alleged onset and had past relevant work in the masonry industry. [R. at 143.] He alleged disability due to anxiety, back pain, hand pain, obesity, and respiratory difficulties.[1] [R. at 140.] The

---

[1] Plaintiff recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 18.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 22.] Because these facts

applications were denied initially on March 23, 2009 and upon reconsideration on December 28, 2009. [R. at 138.] Mr. Butler requested a hearing, which occurred before Administrative Law Judge ("ALJ") Allyn Brooks on August 16, 2011. [*Id.*] At the hearing, Mr. Butler amended his alleged onset date to June 17, 2009 to correspond to Mr. Butler's fiftieth birthday. [R. at 102.] The ALJ determined that Mr. Butler had not been under a disability at any time from the alleged date of onset through the date of the ALJ's September 20, 2011 decision. [R. at 144.]

Mr. Butler died on December 2, 2011. [R. at 11.] On November 2012, however, the Appeals Council granted Mr. Butler's request for review and remanded Mr. Butler's case. [R. at 151.] The Council ordered the ALJ receiving the case to complete the administrative record, give further consideration to Mr. Butler's maximum residual functional capacity ("RFC"), and, if necessary, obtain evidence from a vocational expert to clarify the effect that Mr. Butler's assessed limitations had on his occupational base. [R. at 11.]

In accordance with the Council's order, ALJ John H. Metz conducted a hearing on April 17, 2013. [R. at 11.] By that time, Mr. Butler's widow—Ms. Butler—had submitted the proper documentation to be substituted as a party for Mr. Butler. [*Id.*] Ms. Butler thus appeared before ALJ Metz and testified at the hearing. [*Id.*] Also present were medical expert Paul Boyce, M.D., medical expert James Brooks, Ph.D., vocational expert Gail Corn, and Plaintiff's attorney, Andrew Sheff. [R. at 11.]

ALJ Metz determined that Mr. Butler had not been under a disability at any time from October 10, 2008 through the date of the ALJ's May 28, 2013 decision. [R. at 22.] The Appeals Council denied Ms. Butler's request for review, [R. at 1-6], rendering the ALJ's decision final. Plaintiff then timely filed her complaint in this Court. [Dkt. 1.]

---

involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.

## Applicable Standard

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. The Court, that is, "must be able to trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### The ALJ's Decision[3]

At step one of the five-step sequential analysis, the ALJ found that Mr. Butler had not engaged in substantial gainful activity ("SGA") during the relevant time period. [R. at 13.] The ALJ then proceeded to step two and determined that Mr. Butler suffered from the following severe impairments: bipolar disorder, intermittent explosive disorder ("IED"), anxiety disorder, polysubstance abuse, chronic obstructive pulmonary disorder ("COPD"), degenerative disc disease, osteoarthritis of the left shoulder, and obesity. [*Id.*]

---

[3] Plaintiff challenges only the decision of ALJ Metz. [*See* Dkt 18.] The Court thus does not consider the previous opinion of ALJ Brooks.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment. [R. at 28.] He specifically considered Listing 1.02 and Listing 1.04 to account for Mr. Butler's musculoskeletal impairments and Listing 3.02 to account for Mr. Butler's COPD. [R. at 14.] He also assessed the effects of Mr. Butler's obesity on these impairments in accordance with Social Security Rule ("SSR") 02-1p. [*Id.*]

The ALJ then considered Mr. Butler's mental impairments under Listings 12.04, 12.08, and 12.09. [R. at 14-15.] In doing so, he employed the SSA's special technique for evaluation of mental impairments. He thus considered the "Paragraph B" criteria and found that Mr. Butler had "mild" restrictions in activities of daily living; "moderate" difficulties in social functioning; and "mild" difficulties maintaining concentration, persistence, or pace. [*Id.*] He also found that Mr. Butler had no episodes of decompensation of extended duration, [*id.*], and he concluded that the Paragraph B criteria were not satisfied. [R. at 15.] The ALJ then turned to the "Paragraph C" criteria, but he found that the record contained insufficient evidence to establish that these criteria were satisfied. [*Id.*]

The ALJ next analyzed Mr. Butler's residual functional capacity ("RFC"). He concluded that Mr. Butler would have been able to perform:

> light work as defined in 20 CFR 416.967(b) except the claimant's work must not have required walking more than 15 minutes at a time or more than four (4) hours total during an eight (8) hour workday. In addition, the claimant's work may not have required more than frequent pulling, pushing (at light exertional weight limits) and no more than occasional bending, stopping, kneeling and climbing stairs and ramps. Further, the claimant's work may not have required any climbing [of] ropes, ladders and scaffolds or any exposure to unprotected heights or moving machinery. Finally, the claimant['s] work environment must have required no more than occasional/superficial contact with others and been free of concentrated exposure to respiratory irritants such as dusts, odors, fumes/gases and including extremes of temperatures and humidity.

[R. at 16.] At step four, the ALJ concluded that this RFC would not have allowed Mr. Butler to perform any of his past relevant work. [R. at 20-21.] The ALJ thus proceeded to step five and concluded that someone of Mr. Butler's education, work experience, age, and RFC would have been able to perform jobs such as assembler, hand packager, and inspector. [R. at 22.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Mr. Butler was not disabled. [*Id.*]

## Discussion

Plaintiff presents two main issues for review. She first argues that the ALJ should have found that Mr. Butler was disabled at step three of the sequential evaluation process because Mr. Butler's impairments met or medically equaled Listing 12.08. [Dkt. 18 at 19.] She then argues that the ALJ's RFC analysis was flawed because he allegedly failed to consider certain evidence; erroneously discounted Mr. Butler's credibility; and improperly discounted the opinion of Dr. Greg Lynch. [*Id.* at 25-33.]

### A. Listing 12.08

Plaintiff argues that Mr. Butler was disabled because his impairments satisfied Listing 12.08 for "Personality Disorder." [Dkt. 18 at 19.] To prevail on this argument, Plaintiff bears the burden of showing that Mr. Butler's impairments satisfied "all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Listing 12.08 states that "personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The listing is met when both the "A" and "B" criteria are satisfied. *Id.* The A criteria require "[d]eeply ingrained, maladaptive patterns of behavior" associated with at least one of the following:

6

1. Seclusiveness or autistic thinking; or 2. Pathologically inappropriate suspiciousness or hostility; or 3. Oddities of thought, perception, speech and behavior; or 4. Persistent disturbances of mood or affect; or 5. Pathological dependence, passivity, or aggressivity; or 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior.

*Id.* The B criteria require two or more of the following:

1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration.

*Id.* Plaintiff argues that Mr. Butler's impairment satisfied the criteria of 12.08(A)(5) (pathological dependence, passivity, or aggressivity) and/or 12.08(A)(6) (intense and unstable interpersonal relationships and impulsive and damaging behavior). [Dkt. 18 at 19-20.] She then argues that Mr. Butler satisfied the 12.08(B) criteria because he had "marked" limitations in social functioning and "marked" difficulties in maintaining concentration, persistence, or pace. [*Id.* at 21.]

### 1. 12.08(A)(5) and 12.08(A)(6)

Plaintiff does not differentiate between the 12.08(A)(5) and 12.08(A)(6) criteria, but Plaintiff does cite numerous pieces of evidence indicating that Mr. Butler was aggressive, impulsive, or damaging in his interactions with others. [Dkt. 18 at 20.] She notes, for instance, that Mr. Butler testified that he sometimes had difficulty interacting with supervisors at work, [R. at 121], and that he once faced criminal charges for attacking a patron at a car dealership. [R. at 122.] Plaintiff also observes that Mr. Butler was sometimes combative when dealing with medical personnel. [*See, e.g.*, R. at 488 (noting that Mr. Butler threatened a consultative examiner "by saying he will bust [his] face in"); R. at 451 (noting that Mr. Butler was once ordered to leave an emergency room after speaking harshly to nursing staff).] At the April 17, 2013 hearing, Plaintiff herself

testified that Mr. Butler experienced anger issues, [R. at 78], and Plaintiff concludes that the above-described evidence satisfies that "A" criteria. [Dkt. 18 at 21.]

The Commissioner contests this conclusion only on the grounds that much of Plaintiff's evidence consists of Mr. Butler's own testimony which, the Commissioner argues, the ALJ properly found was not entirely credible. [Dkt. 22 at 10.] As Plaintiff notes in reply, however, much of the evidence also consisted of medical records documenting Mr. Butler's belligerent behavior. [*See, e.g.*, R. at 488 (consultative examiner's report); R. at 451 (emergency room record).] The Court does not need to resolve this dispute: satisfying the "A" criteria is only part of Plaintiff's burden, *see Ribaudo*, 458 F.3d at 583 (emphasis added) (requiring claimant to satisfy "*all* of the various criteria specified in the listing"), and the Court thus assumes without deciding that Plaintiff's evidence established that the A criteria were satisfied. The Court now turns to the remaining criteria of Listing 12.08.

### 2. 12.08(B): "Marked" Difficulties in Social Functioning

Social functioning refers to the capacity "to interact independently, appropriately, effectively, and on a sustained basis with other individuals." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. It involves the ability to "get along with others, such as family members [and] friends." *Id.* Impaired social functioning may be indicated by "a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation." *Id.* Social competency, in contrast, may be demonstrated by the "ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities." *Id.* In addition, an ALJ should consider factors such as the ability to interact with the public, respond to supervisors, and cooperate with coworkers. *Id.*

The ALJ in this case acknowledged that some evidence—such as the above-mentioned consultative examination—indicated that Mr. Butler was "a combative and surly individual." [R. at 15.] The ALJ, however, then noted that Mr. Butler "was married and [had] three (3) mature children and was social with friends frequently and family occasionally." [*Id.* (citing R. at 613-18).] He also inquired at the hearing about Mr. Butler's social functioning, and he received testimony that Mr. Butler was able to leave the house to eat at restaurants and attend church. [R. at 65-66.] Finally, the ALJ noted that—as described by one of the medical experts, [*see* R. at 88]—much of Plaintiff's irritable behavior was the product of substance abuse, rather than an underlying mental impairment. [R. at 17.] Based on this discussion, the ALJ considered the proper factors in the social functioning analysis, *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, and the Court is not inclined to disturb the ALJ's ultimate assessment that Mr. Butler suffered from only "moderate" limitations. *See Overman*, 546 F.3d at 462 (reviewing court does not reweigh the evidence).[4]

Plaintiff opposes the ALJ's conclusion on the grounds that Mr. Butler's Global Assessment of Functioning ("GAF") score established that Mr. Butler had "marked" limitations in social functioning. [Dkt. 18 at 22.] This argument rests on a psychological consultation completed by Dr. Greg Lynch in September 2009. [R. at 613.] That doctor examined Plaintiff and assigned a GAF score of 50, [R. at 616], indicating "serious" mental health symptoms or "serious impairment in social, occupational, or school functioning." [Dkt. 22 at 4 n.1.] Plaintiff focuses on this score as evidence that Mr. Butler "[had] at least marked limitations in social functioning." [Dkt. 18 at 22.]

---

[4] Plaintiff's reply suggests that ALJ's evaluation was nonetheless inappropriate because it "[made] no mention of Ms. Butler's April 2013 testimony." [Dkt. 23 at 4.] The ALJ, however, acknowledged Ms. Butler's testimony, [R. at 11, 20], and the ALJ's opinion—as described below—addressed the substance of the alleged limitations that Ms. Butler described.

A GAF score, however, is not as probative of disability as Plaintiff asserts. Physicians and psychologists assign these scores to make treatment decisions, not to establish disability; thus, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Further, GAF scores are merely "'snapshots' of a particular moment rather than a longer-term prognosis," *Barnica v. Colvin*, No. 13-C-1012, 2014 WL 4443279, at *5 (E.D. Wis. Sept. 9, 2014), and they accordingly have little weight in assessing a claimant's ongoing ability to function. *See, e.g.*, *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("A person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition."). Thus, even if Mr. Butler did manifest serious mental symptoms during Dr. Lynch's consultative exam, this snapshot of Plaintiff's condition does not indicate the sort of long-lasting impairment that would establish that Mr. Butler's impairments equaled a listing. *See* 42 U.S.C. § 423(d)(1)(A) (disability must be based on impairment lasting "for a continuous period of not less than 12 months"). The ALJ therefore did not err in determining that the GAF score did not require a finding that Plaintiff met or equaled the criteria of 12.08.

Next, the reports of medical experts support the ALJ's conclusions about Mr. Butler's social functioning. First, Dr. Stacia Hill completed a Psychiatric Review Technique ("PRT") form and determined that Plaintiff had only "mild" difficulties in social functioning. [R. at 634.] Although the ALJ ultimately decided that additional social limitations were warranted, the ALJ still gave this opinion "some weight," [R. at 20], and Dr. Hill's findings thus support the ALJ's conclusion that Plaintiff's impairments in this area were not "marked." *See, e.g.*, *Whetzel v. Astrue*, No. 1:07-CV-210-TS, 2009 WL 537640, at *21 (N.D. Ind. Mar. 4, 2009) (citing *Scott v.*

*Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990)) ("[O]ther opinions support the ALJ's conclusion of moderate limitations. The state agency doctors, who reviewed [claimant's] record and completed the Psychiatric Review Technique form, found no medically determinable mental impairment. Although the ALJ ultimately assigned little weight to this determination, it nonetheless supports a finding of less-than-marked impairments[.]").

Next, the ALJ based his finding of "moderate" difficulties on the opinion of medical expert Dr. James Brooks. [*See* R. at 19.] That doctor testified at Plaintiff's hearing and noted that Plaintiff was "having anger control problems," which would affect his social functioning. [R. at 88.] He thus determined that Plaintiff would suffer from more than the "mild" limitations identified in Dr. Hill's PRT form. [*Id.*] At the same time, however, the doctor noted that Plaintiff maintained relationships with his family and friends, such that Mr. Butler's social limitations did not rise to a "marked" level. [*See id.*] Dr. Brooks' opinion thus supported the ALJ's ultimate conclusion that Plaintiff did not suffer from "marked" limitations in social functioning.[5]

Plaintiff then argues that the ALJ should not have relied on Dr. Books' opinion because it was based on an incomplete review of Mr. Butler's records. [Dkt. 18 at 24.] Plaintiff claims that "the only records that [Dr. Brooks] reviewed, according to his own testimony, for psychological purposes, were Dr. Lynch's psychological consultative examination. Dr. Brooks failed to look throughout the entire record, as required, which would include everything outside of the psychological documents as well, when making his findings." [*Id.* (citations omitted).]

This argument badly misstates the record. Dr. Brooks testified that he had "review[ed] the medical evidence of record," [R. at 85], and specifically stated that he had reviewed even

---

[5] Significantly, Dr. Brooks was present for and cited the testimony of Ms. Brooks. [R. at 87 ("The wife has testified . . ."); R. at 88 ("I hear testimony about [Mr. Butler] being depressed or having history of mood disorders.")]. By deciding to credit Dr. Books' opinion, [R. at 20], the ALJ thus addressed Ms. Butler's testimony and did not—as Plaintiff argues—"fail[] to analyze this clearly important evidence." [Dkt. 23 at 9.]

Plaintiff's non-psychological records. [R. at 87 (emphasis added) ("**I do note some other records, although they're not psychiatric records**).] Further, the only reason that the doctor did not review any additional mental health records is because the **record did not contain any such additional records**. [*Id.* ("There's no psychiatric records in here after 2009."); *see also* Dkt. 12-1 (index of administrative record).] Thus, if Dr. Brooks based his conclusions on scant medical evidence, that fact is not an indication that Dr. Brooks' conclusion is unreliable; instead, that fact is simply an indication that Plaintiff's mental impairments were not actually disabling. *See, e.g.*, 20 C.F.R. § 404.1508 (disabling impairments "must be established by medical evidence"). The ALJ therefore did not err in relying on Dr. Brooks' opinion, and substantial evidence supports the ALJ's finding that Plaintiff suffered from no more than "moderate" limitations in social functioning.

### 3. 12.08(B): "Marked" Difficulties in Concentration, Persistence, or Pace

Concentration, persistence, or pace refers to the ability to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Limitations in this area "can often be assessed through clinical examination or psychological testing," although an ALJ should also consider evidence from occupational settings. *Id.*

The ALJ in this case concluded that Plaintiff had "mild" limitations in this area. [R. at 15.] He noted that Mr. Butler had not completed high school, but he also observed that "there is no objective evidence or clinical evidence the claimant has any cognitive or memory deficits." [*Id.*] He then noted that Mr. Butler had exhibited the ability to perform skilled work even after the alleged onset of disability. [*Id.*; *see also* R. at 17.] The ALJ's evaluation thus properly addressed the factors outlined above. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Plaintiff nonetheless attacks the ALJ's conclusion. She first observes that Dr. Hill's PRT form indicated that Mr. Butler had "moderate" difficulties in concentration, persistence, or pace. [R. at 634.] However, Plaintiff does not explain how this form supports her argument. [*See* Dkt. 18 at 23.] Dr. Hill's finding of "moderate" rather than "mild" limitations is a distinction without a difference: the relevant question is whether Mr. Butler had "marked" limitations in concentration, persistence, or pace, *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, and so regardless of whether his limitations were "moderate" or "mild," the fact remains that he did not satisfy the B criteria for Listing 12.08. Dr. Hill's report—if anything—merely confirms the ALJ's step three conclusion, and Plaintiff's citation of this report does nothing to advance her case.

Plaintiff then cites Dr. Lynch's assignment of a GAF score of 50. [Dkt. 18 at 23-24.] As explained above, however, a GAF score is merely a "snapshot" of a claimant's mental functioning that says little about the degree of a claimant's long term impairment. *See Punzio*, 630 F.3d at 710. The ALJ therefore did not err in his implicit[6] conclusion that the GAF score in this case did not mandate a finding that Plaintiff met or equaled listing 12.08.

In addition, Dr. Brooks expressly considered the record of Dr. Lynch's consultative examination. [R. at 85-86.] He observed that "[t]here did not appear to be much problem" with Plaintiff's cognitive functioning "during the evaluation itself," [R. at 86-87], and he stated that he did not have "any evidence that there's any significant impairment in [Mr. Butler's] cognitive functioning." [R. at 88.] As a result, Dr. Brooks' evaluation of Mr. Butler's records supported the ALJ's conclusion that Mr. Butler had no more than mild limitations in concentration, persistence, or pace. [*See* R. at 19 (noting that Dr. Brooks testified that "there simply was not enough

---

[6] The Court says "implicit" because the ALJ specifically cited the GAF only when constructing Plaintiff's RFC, [R. at 19], rather than during his step three analysis. [*See* R. at 15.] The Court, however, reads the ALJ's opinion as a whole, *see, e.g.*, *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004), such that the ALJ had no obligation to explicitly consider the score at step three as well.

evidence to support the notion [that] the claimant had moderation limitations in concentration, persistence, or pace").]

Plaintiff then faults the ALJ for allegedly ignoring her testimony during the hearing. [Dkt. 18 at 23.] She notes that she testified that Mr. Butler "was easily frustrated" and "enraged by his inability to complete work that was once simple for him," with the apparent implication that such frustration would impair his ability to concentrate and complete tasks. [*Id.* (citing R. at 77-80).]

The cited portions of Plaintiff's testimony, however, deal less with Mr. Butler's alleged work-related cognitive limitations and more with his difficulty in social functioning. [*See, e.g.*, R. at 78 (describing Mr. Butler's threat against examining doctor); R. at 78-79 (describing incident in which Mr. Butler allegedly struck a patron while working as an auto mechanic).] The ALJ acknowledged these anger issues both when evaluating Mr. Butler's social functioning, [*see* R. at 15 ("[C]laimant . . . was a combative and surly individual.")], and later, when discussing Mr. Butler's RFC. [R. at 19 (noting diagnosis of IED).] Thus, even assuming, *arguendo*, that these anger issues affected Plaintiff's concentration, persistence, or pace, the ALJ was not obligated to specifically repeat his consideration of these issues. *See, e.g., Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("[The ALJ's] discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant."). The ALJ was thus aware of and considered the issues raised by the cited portions of Ms. Butler's testimony, such that Plaintiff's argument that the ALJ ignored this testimony is unavailing. As a result, the ALJ did not err in concluding that Plaintiff did not meet the B criteria for Listing 12.08.

### 4. Combination of Impairments

Plaintiff's last argument at step three is that the ALJ and Dr. Brooks did not properly consider Mr. Butler's impairments in combination. [Dkt. 18 at 25.] Plaintiff notes that the ALJ determined that Mr. Butler suffered from eight different severe impairments, including bipolar disorder, IED, and COPD. [*Id.*] She then vaguely asserts that "significant limitations" accompanied each impairment, such that the combination of impairments "would more than likely medically equal a listing." [*Id.*]

This conclusory argument does not establish that the ALJ erred. At step three of the sequential evaluation process, the claimant bears the burden to show that he is disabled. *See, e.g.*, *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). And, as noted above, the claimant "must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo*, 458 F.3d at 583. Plaintiff has offered no evidence or analysis whatsoever to support her contention that the allegedly "significant limitations" associated with Mr. Butler's other impairments would "more than likely" equal a listing, [*see* Dkt. 18 at 25], and she has thus failed to explain how the combination of these impairments would satisfy "all of the various criteria" of any listing. In addition, the ALJ expressly stated that he considered Mr. Butler's impairments "in combination." [R. at 14.] In the absence of any evidence to the contrary, the Court will not conclude that the ALJ failed to do so. Plaintiff's last argument on this point thus does not require remand.

### B. RFC Determination

Plaintiff next argues that the ALJ's RFC determination was flawed. [Dkt. 18 at 25.] She specifically contends that the ALJ ignored evidence related to Mr. Butler's limitations in social functioning [*id.* at 25-26]; improperly evaluated Mr. Butler's credibility [*id.* at 26-30]; and erroneously assigned little weight to the opinion of Dr. Greg Lynch. [*Id.* at 30-33.]

### 1. Limitations in Social Functioning

Plaintiff argues that the ALJ's conclusion that Mr. Butler could have "no more than occasional/superficial contact with others," [R. at 16], did not sufficiently account for Mr. Butler's social functioning. [Dkt. 18 at 25.] She relies on Social Security Rule 85-15, which provides that a finding of disability may be appropriate if a claimant lacks the ability "to respond appropriately to supervision, coworkers, and usual work situations." SSR 85-15. Based on this Ruling, she contends that the ALJ's "failure to consider Mr. Butler's ability to handle social interaction in a work environment is a crucial error." [Dkt. 18 at 25.]

Plaintiff's argument rests entirely on her previous argument that the ALJ erred in his evaluation of Mr. Butler's social functioning during his consideration of the Paragraph B criteria. [*See id.*] As discussed above, however, the ALJ did not err in determining that Mr. Butler had only "moderate" difficulties in social functioning. Further, the ALJ considered these limitations in evaluating Plaintiff's capacity for work: rather than "fail[ing] to consider Mr. Butler's ability to handle social interaction in a work environment," [Dkt. 18 at 25], the ALJ specifically asked Dr. Brooks if Mr. Butler "could still do at least occasional contact with others." [R. at 90.] Dr. Brooks replied that Mr. Butler would be able to, [*id.*], and the ALJ accordingly included a restriction to "occasional/superficial contact with others" in his final RFC analysis. [R. at 16.] The ALJ therefore considered Plaintiff's social limitations, and there is no need to remand this case for reconsideration of this issue.

### 2. Credibility Determination

The ALJ found that Mr. Butler's complaints about his symptoms were "not entirely credible." [R. at 16.] Plaintiff now contends that the ALJ's credibility determination was flawed

1) because he assigned too much weight to Mr. Butler's work attempts [Dkt. 18 at 25-28]; and 2) because he relied on "incorrect and insufficient information." [*Id.* at 28-30.]

An ALJ evaluating a claimant's credibility must consider factors such as the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the effects of medication; the effects of treatment other than medication; any measures other than medication or treatment that the claimant has used to alleviate his symptoms; and any other relevant factors. 20 C.F.R. § 404.1529(c). The ALJ should also consider whether the Plaintiff's complaints are consistent with objective medical evidence. *Id.* § 404.1529(a). The Court's review of this analysis is deferential. "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this court will not overturn an ALJ's credibility determination unless it is patently wrong." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (citation and quotation marks omitted); *see also Milliken v. Astrue*, 397 F. App'x 218, 225 (7th Cir. 2010) (plaintiff faces "heavy burden" to show that credibility determination was incorrect). As explained below, neither of Plaintiff's arguments demonstrate that the ALJ's credibility determination in this case was patently wrong.

### a. Mr. Butler's Work Experience

The ALJ explicitly listed and considered the factors outlined in 20 C.F.R. § 404.1529. [R. at 16-20.] When discussing 1) Mr. Butler's daily activities; 2) the location, duration, and frequency of Mr. Butler's symptoms; and 3) "other factors" affecting Mr. Butler's credibility, the ALJ observed that—despite his allegedly disabling symptoms—Mr. Butler had continued to work after his alleged onset date. [R. at 17, 20.] Plaintiff contends this was erroneous: she correctly notes that "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits," [Dkt. 18 at 26 (citing

*Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005))], and she therefore maintains that the ALJ attached too much weigh to Mr. Butler's work activities. [*See id.* at 26-27.]

This argument is unavailing for several reasons. First, Plaintiff repeatedly refers to Mr. Butler's post-onset work activities as mere work "attempts." [Dkt. 18 at 27 ("attempting self-employment"); *id.* ("continue[d] to make work attempts"); *id.* ("continued work attempts").] She thus implies that Mr. Butler tried to work but, because of his allegedly disabling impairments, could not actually do so. She then faults the ALJ for considering these "attempts." [*Id.* at 28 ("It is clear that work attempts are not a clear sign that someone is not disabled; therefore, to use these attempts to attack a claimant's credibility is flawed and unfounded.")]

The ALJ, however, relied on a consultative examination performed by Dr. Sherif Shamaa. [R. at 17; 487.] There, Mr. Butler did not report that he had merely "tried" or "attempted" to work; to the contrary, he reported that he "works for himself," [R. at 487], and "is working for himself." [R. at 488.] Mr. Butler also explained that, because "he is still currently working for himself," he was "just filing for disability for his wife." [R. at 487.] The examination thus indicated that Mr. Butler actually *was* working, rather than trying and failing to work, and the ALJ's reliance on this report, [*see* R. at 17], was not misplaced.[7]

Next, Plaintiff contends that the ALJ ignored certain evidence related to Mr. Butler's continued work. [Dkt. 18 at 27.] She notes that although Mr. Butler was working as a carpet

---

[7] The consultative examination occurred on February 2, 2009, [R. at 487], which was after Mr. Butler's original onset date of September 1, 2008. At the first hearing, in 2011, Plaintiff amended his onset date to June 17, 2009, [R. at 102], which could indicate that the work he described at the consultative examination no longer post-dated his onset date. At that same hearing, however, Mr. Butler testified that he had worked as recently as fall 2010, [R. at 105], suggesting that he did indeed continue to work after his amended onset date. In any case, Plaintiff has not argued that Mr. Butler's condition worsened between the February 2, 2009 consultative examination and the amended onset date, [*see* Dkt. 18 at 26-28], and so she has waived any argument that it was improper to rely on the consultative examination as evidence that Plaintiff was working after his onset date. *See, e.g.*, *Haggard v. Colvin*, No. 1:12-CV-1263-SEB-TAB, 2013 WL 6388365, at *2 (S.D. Ind. Dec. 5, 2013) (citations omitted) (perfunctory and/or undeveloped arguments are waived).

installer, he had difficulty carrying the rolls of carpet. [*Id.* (citing R. at 487).] She also notes that Mr. Butler reported hip and back pain that might have interfered with work activities, and she suggests that the ALJ ignored some of these reports. [*Id.* (citing R. at 485-495, 593-95).]

The ALJ, however, considered both of these potential limitations. First, he restricted Mr. Butler to "light work as defined in 20 CFR 416.967(b)." [R. at 16.] He thus limited Mr. Butler to work that involved "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Hence, even if Mr. Butler did have difficulty carrying rolls of carpet, the ALJ's RFC was not inconsistent with this difficulty. Second, the ALJ specifically discussed Plaintiff's alleged pain. [*See, e.g.*, R. at 16 ("chronic pain in his back"); R. at 17 ("chronic pain from relatively mild musculoskeletal conditions"); R. at 18 ("complaints of neck, back and shoulder pain").] Indeed, the ALJ even cited some of the exhibits that Plaintiff claims were ignored. [R. at 16 (citing R. at 491-495).] Further, to the extent that the ALJ *did* decide not to cite certain records, this decision was not erroneous: An ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson*, 999 F.2d at 181, and so the ALJ's extensive evaluation of Mr. Butler's pain in this case was adequate to demonstrate that he appropriately considered this issue.

Finally, even if certain cases support Plaintiff's position that working is not necessarily inconsistent with a finding of disability, *see Gentle*, 430 F.3d at 867, other cases acknowledge that post-onset work is a fact that can detract from a claimant's credibility. *See, e.g.*, *Martz v. Astrue*, No. 1:07-CV-00219, 2008 WL 975051, at *5 (N.D. Ind. Apr. 8, 2008) (citing *Steward v. Bowen*, 858 F.2d 1295, 1302 (7th Cir.1988)) ("[T]he ALJ properly considered as a factor in his credibility analysis that in the three years following her alleged onset date, [claimant's] daily activities included performing some work[.]"); *see also Schmidt v. Barnhart*, 395 F.3d 737, 746

(7th Cir. 2005) (ability to work may be considered "as one of many factors adversely impacting his credibility"). As noted above, the ALJ in this case specifically discussed each of the factors outlined in 20 C.F.R. § 404.1529(c), and his discussion of Mr. Butler's continued work was thus "one of many factors" in the ALJ's credibility determination. As such, the ALJ's consideration of Mr. Butler's work activities was not erroneous. *See Schmidt*, 395 F.3d at 746.

### b. "Incorrect and Insufficient" Information

Plaintiff's second argument is that the ALJ erred by ignoring Ms. Butler's functional report on Plaintiff's daily activities, [R. at 320-331], and the testimony that Ms. Butler provided at the April 17, 2013 hearing. [Dkt. 18 at 28-30.] Ms. Butler indicated in her functional report that Mr. Butler could lift no more than five pounds and had trouble with numbness in his right hand, [R. at 321, 325], and her testimony included similar limitations. [R. at 61-64.] She also testified that Mr. Butler needed to use a cane and experienced back pain that interfered with his daily activities. [R. at 47, 66.] She then added that Mr. Butler tried to care for his invalid brother, but that he often injured himself while doing so. [R. at 82.]

Contrary to Plaintiff's argument, the ALJ considered the substance of each of these alleged limitations. First, despite Ms. Butler's claim of limited lifting capacity, the ALJ noted, [R. at 16], that Mr. Butler himself stated that "he can lift 35 to 50 pounds." [R. at 619.] Additionally, the state agency reviewing expert indicated that Mr. Butler would be able to frequently lift ten pounds and occasionally lift twenty pounds, [R. at 652], and Dr. Boyce testified to the same effect at the hearing. [R. at 39.] The ALJ then adopted Dr. Boyce's opinion as "an adequate if not generous accommodation" of Plaintiff's impairments. [R. at 18.] Thus, rather than ignoring Ms. Butler's allegations, the ALJ simply credited Mr. Butler's own testimony and the expert medical opinions in the record.

Next, the ALJ addressed the alleged numbness in Mr. Butler's right hand: he received testimony from Dr. Boyce indicating that the doctor reviewed the record and "did not see any manipulative restrictions." [R. at 38-39.] The ALJ then specifically asked about "fine or gross manipulation," and Dr. Boyce responded that Plaintiff would have "no restrictions." [R. at 40.] The ALJ's treatment of Mr. Butler's alleged use of a cane was similar: he asked Dr. Boyce if there was "anything in the record that shows [Mr. Butler] would need an assistive device to ambulate," and Dr. Boyce stated that there was not. [R. at 40.] The ALJ then observed in his written opinion that Ms. Butler "testified that [Mr. Butler] used a cane periodically," but added that "there is no evidence to support that statement." [R. at 20.]

In both cases, then, the ALJ did not "rel[y] on incorrect and insufficient information." [Dkt. 18 at 28.] Instead, he simply compared the alleged restrictions to the other evidence in the record and found that this other evidence did not support including those limitations in his ultimate RFC analysis. The Court can thus easily "trace the ALJ's path of reasoning" from the evidence to his conclusion, *Clifford*, 227 F.3d at 874, such that the ALJ did not err in considering these aspects of Mr. Butler's claim.

The ALJ then addressed the effects of Mr. Butler's alleged pain on his daily activities. Here, Ms. Butler testified that Mr. Butler had "really bad" back pain and that he needed assistance with activities such as bathing and shopping. [*See, e.g.*, R. at 51, 63, 66.] As described above, however, the ALJ extensively discussed Plaintiff's pain, such that he did not "fail[] to consider," [Dkt. 18 at 30], this aspect of Ms. Butler's testimony. In addition, the ALJ cited functional reports submitted by both Ms. Butler and Mr. Butler. [R. at 17 (citing R. at 320-344).] These reports indicated that Mr. Butler was able bathe and shop by himself, [R. at 321, 323, 333, 335], and these reports thus contradicted Ms. Butler's testimony. Further, even if Ms. Butler's

testimony was more recent than the functional reports, the functional reports were still submitted well after Plaintiff's amended alleged onset of disability, [*see* R. at 327, 339], and they thus indicate that Mr. Butler's impairments were not as severe as alleged.[8]

Plaintiff finally suggests that the ALJ should have given more consideration to Ms. Butler's testimony that Mr. Butler cared for his brother. [Dkt. 18 at 30.] The ALJ, however, assessed Mr. Butler's activities of daily living and noted that the "claimant also apparently was required to provide a fair amount of care to his invalid brother." [R. at 17.] The ALJ then added that some of Plaintiff's impairments resulted from injuries incurred while caring for his brother. [R. at 19 (citing R. at 659-675).] It is thus obvious that the ALJ did not ignore the substance of Ms. Butler's testimony on this issue.

Further, it is unclear how Mr. Butler's care for his brother supports Plaintiff's claim that Mr. Butler was disabled: On one occasion, for instance, Mr. Butler hurt his back while helping his brother out of a bathtub. [R. at 670.] He sought treatment at an emergency room, but subsequent diagnostic imaging showed only "mild" degenerative changes and "[n]o acute fracture or malalignment." [R. at 669.] The ALJ also observed, [R. at 19], that Mr. Butler declined further treatment and "did not want a prescription for pain meds." [R. at 674.] Thus, even if Mr. Butler may have suffered injuries in caring for his brother, they evidently did not disable him. *See, e.g.*, 20 C.F.R. § 404.1529 (noting that lack of treatment or medication may be indication that symptoms are not disabling).

---

[8] If Plaintiff's argument is that Mr. Butler's condition worsened between the submission of the functional reports and the later testimony by Ms. Butler, then Plaintiff could have amended the onset date to reflect that change in circumstances, just as Mr. Butler amended the onset during the first hearing. [*See* R. at 102.] That she did not do so suggests that Mr. Butler's condition did not worsen, and in any event, Plaintiff's failure to make this argument—as noted previously—means she has waived it. *See Haggard*, 2013 WL 6388365, at *2.

For all these reasons, the ALJ did not err in his credibility determination. Plaintiff may argue that the ALJ did not base his determination on the "totality of the evidence," [Dkt. 18 at 30], but the above discussion indicates that the ALJ considered each piece of evidence that was allegedly ignored. As a result, the Magistrate Judge finds no error that would require remand.

### 3. Opinion of Dr. Greg Lynch

As noted above, Dr. Lynch performed a mental health consultative examination on September 17, 2009. [R. at 613.] He wrote that Mr. Butler showed "impulsive" decision-making, had "poor" judgment, was sometimes "isolate[d]" from others, and was at times "irritable" and "aggressive." [R. at 615-616.] He assigned a GAF score of 50 and diagnosed bipolar disorder, intermittent explosive disorder, and anxiety disorder. [R. at 616.]

The ALJ considered Dr. Lynch's report, [R. at 19], but he gave more weight to the opinion of Dr. Brooks. [R. at 20.] Plaintiff contends this decision was erroneous because Dr. Lynch was an examining physician whereas Dr. Brooks was not. [Dkt. 18 at 30-31; Dkt. 23 at 6-7.] As support, she notes that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record," and that "a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

*Gudgel* does not support Plaintiff's argument. The ALJ in this case did *not* discount Dr. Lynch's opinion simply because it was inconsistent with Dr. Brooks' opinion; to the contrary, the ALJ received testimony that explained at length why Dr. Lynch's opinion was entitled to little weight: First, Dr. Brooks noted that Dr. Lynch's own evaluation contained little evidence to support Dr. Lynch's diagnosis of bipolar disorder. [R. at 86 ("[Q]uite frankly, there's very little evidence of that in this evaluation."); *see also id.* ("really very minimal evidence").] Second, Dr.

Brooks noted that even though Mr. Butler told Dr. Lynch that he "was buying pain medication off the street," Dr. Lynch failed to diagnosis Plaintiff with "a substance abuse disorder." [*Id.*] Finally, Dr. Brooks compared Dr. Lynch's omission of a substance abuse diagnosis to other evidence in the record, such as emergency room visits documenting an "accidental overdose of alcohol [and] methadone," [R. at 87], and the evidence of abuse documented in Dr. Hill's mental RFC analysis. [*Id.*; *see also* R. at 640.] Together, these statements indicate that Dr. Lynch's opinions and diagnoses were not supported by his own notes or by other evidence in the record. The ALJ was therefore entitled to discount Dr. Lynch's opinion. *See, e.g.*, *McCurrie v. Astrue*, 401 F. App'x 145, 150 (7th Cir. 2010) (upholding ALJ's conclusion where "[non-examining doctor] testified that [examining doctor's] opinion was inconsistent with other medical findings in the record and was not supported by objective evidence in the record").

Plaintiff then faults the ALJ for allegedly not considering Mr. Butler's medical evaluations in accordance with 20 C.F.R. § 404.1527(c)(2). [Dkt. 18 at 31.] This subsection provides that an ALJ considering a medical opinion will always consider factors such as 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the relationship; 3) the amount of support for the opinion; 4) the consistency of the opinion with the record as a whole; 5) the specialization of the treating source; and 6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). The ALJ "must" consider these factors, *see, e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010), and Plaintiff thus contends that the ALJ erred because he "[did] not mention, let alone discuss, any of these factors." [Dkt. 18 at 31.]

Plaintiff's argument overlooks the fact that the ALJ plainly did consider the above-listed factors. First, the ALJ noted that Dr. Lynch's opinion was based on "no additional evidence aside

from his interview," [R. at 19], such that the opinion came from a doctor who did not have a long or involved relationship with the claimant. This, in turn, would reduce the weight attributable to Dr. Lynch's opinion. *See* 20 C.F.R. § 404.1527(c)(2). In addition, because the opinion came from a single encounter with Mr. Butler, [R. at 19], the opinion was not necessarily supported by or consistent with the rest of the record. Again, this would reduce the weight attributable to Dr. Lynch's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion); *id.* § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). In contrast, the ALJ observed that Dr. Brooks' opinion was "consistent with the objective and clinical findings documents in the claimant's medical evidence of record." [R. at 20.] The ALJ's opinion thus directly addressed the supportability and consistency of the medical opinions at issue.

Next, an ALJ has no obligation to "explicitly apply every checklist factor" when evaluating a consultative examiner's opinion. *McCormick v. Astrue*, No. 1:11-CV-00328, 2012 WL 1886508, at *13 (N.D. Ind. May 23, 2012). Instead, it is enough that "the ALJ generally covers the ground of 20 C.F.R. § 404.1527(c) and provides 'good reasons' for the weight assigned to the physician's opinion." *Id.* Here, then, the fact that the ALJ's opinion did not explicitly list or discuss the remaining factors set out in § 404.1527(c) is not fatal to the ALJ's decision. The ALJ addressed the nature of Dr. Lynch's relationship with Mr. Butler, as well as the consistency and supportability of Dr. Book's opinion. These are "good reasons" for weighing the medical opinions as the ALJ did, *see* 20 C.F.R. § 404.1527(c), and the Magistrate Judge therefore will not disturb the ALJ's conclusion on this issue.

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Ronda D. Butler, for the deceased James D. Butler is not entitled to Disability Insurance Benefits or Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  05/11/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Andrew P. Sheff
SHEFF LAW OFFICE
andrew@shefflegal.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov